UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOUAN JACKSON,

                Plaintiff,

        -against-

DESTINY'S CHILD, et al.,

                Defendants.

1:23-CV-10507 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Jouan Jackson, who is appearing *pro se*, asserts claims of copyright infringement and "mental anguish." He sues the following defendants: (1) Destiny's Child; (2) Beyoncé Giselle Knowles-Carter; (3) Kelly Rowland; (4) Rodney Jerkins; (5) Fred Jerkins III; (6) Latavia Roberson; (7) Letoya Luckett; (8) Beyoncé Publishing, Inc.; (9) Parkwood Entertainment, LLC; (10) Sony Music Entertainment; (11) Columbia Records; and (12) the Estate of Lashawn Daniels. Plaintiff seeks declaratory relief, injunctive relief, and damages.[1]

By order dated December 4, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. On January 18, 2024, Plaintiff filed a motion for leave to file a second amended complaint within 90 days. (ECF 6.) The Court grants Plaintiff's motion insofar as the Court grants Plaintiff 60 days' leave to file a second amended complaint, as specified below.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

---

[1] Plaintiff's amended complaint is the operative pleading for this action. (ECF 4.)

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See*

Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.*

But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action,"

which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After

separating legal conclusions from well-pleaded factual allegations, the Court must determine

whether those facts make it plausible – not merely possible – that the pleader is entitled to relief.

*Id.* at 679.

**BACKGROUND**

Plaintiff alleges the following: In 1996, Plaintiff wrote a song entitled "Assumptions Day." In 1997, he recorded "Assumptions Day." During that period, Plaintiff, who presently resides in New York, New York, was residing in Virginia Beach, Virginia. On March 21, 1997, he hand-delivered a "demo tape" containing four songs, including "Assumptions Day," to a music company known as Future Records, located in Virginia Beach. On April 28, 1997, a social worker evaluated him for the Virginia Beach Department of Social Services. "Plaintiff, at that time, was deemed unable to work due to severe depression and significant difficulties with[] consolidating thoughts." (ECF 4, at 32.) Plaintiff's "medical disability onset date" was documented as being November 1, 1997. (*Id.* at 36.)

In 1998, Plaintiff noticed "striking similarities" between a song called "Say My Name," by Rodney Jerkins and the songs that he submitted to Future Records in 1997. (ECF 4, at 24.) Plaintiff relocated to Norfolk, Virginia. Following the release of Rodney Jerkins's album "Never Say Never" on June 9, 1998, "Plaintiff was compelled to undergo hospitalization in a mental psychiatric asylum." (*Id.* at 33.) On July 17, 1998, "a Medicaid Disability Unit (MDU) for the Commonwealth of Virginia's Department of Rehabilitative Services" evaluated Plaintiff and determined that he "fully satisfied the disability requirements for Medicaid." (*Id.* at 32-33.) "Plaintiff believed that . . . external factors made hospitalization necessary to address [his] mental health issues." (*Id.* at 33.) Among those external factors was the release of the album "Never Say Never" by Rodney Jerkins. The release of that album "directly triggered[] his severe mental health issues, leading to . . . extended hospitalization(s) during 1998 [to] 2002," including his admission to the Eastern State Hospital on October 9, 1998, until he was discharged on January 13, 1999, and his readmission to that hospital on April 14, 1999, until he was discharged again on May 11, 1999. (*Id.* at 33, 35.)

Plaintiff registered "the lyrical composition entitled 'Assumptions Day' . . . with the United States Copyright Office on August 9, 2001[,] under Registration No. PAu2-620-878." (*Id.* at 4.) He "owns a copyright ([his] registered work entitled Photo Finish) with respect to his song ['Assumptions Day.']" (*Id.*) The "'Photo Finish' song collection, . . . includes the song 'Assumption Day.'" (*Id.* at 8.)

"[T]he alleged infringements, which have persisted over time, are intrinsically linked to the release of the album 'Never Say Never' by . . . Rodney Jerkins." (*Id.* at 34.) "Rodney Jerkins was . . . among several individuals hired to contribute to [the vocal group] Destiny Child's second album." (*Id.* at 36.) "[A] pervasive pattern of thematic and lyrical similarities found in multiple songs produced by Jerkins . . . is evident in various tracks by Destiny's Child, [and by vocal artists] Jennifer Lopez[] and Monica."[2] (*Id.* at 62-63.) This pattern "echo[s] the distinctive elements present in . . . [P]laintiff's . . . work submitted on March 21, 1997, . . . to Teddy Riley of Future Records. (*Id.* at 63.) Riley "has a well-known professional relationship with [Rodney] Jerkins, . . . [who] had access to and subsequently utilized . . . [P]laintiff's original material in producing these songs." (*Id.*) "The striking similarities between these songs and [Plaintiff's] original work, coupled with [Rodney] Jerkins['s] connection to . . . Riley, suggest a deliberate

---

[2] Plaintiff alleges that, among other songs, the defendants have infringed on his copyright by releasing the following songs: (1) "Say My Name," released in October 1999, by Destiny's Child, a vocal group that includes Beyoncé Giselle Knowles-Cater and Kelly Roland; (2) "That's the Way," released on January 23, 2001, by Rodney Jerkins, and also recorded by Jennifer Lopez; (3) "All Eyez on Me," released on September 11, 2002, by Monica; (4) "So Good," released on July 14, 1999, by Destiny's Child; (5) "Temptation," released on November 16, 1999, by Destiny's Child; (6) "Illusions," released in October 1997, by Destiny's Child; (7) "No, No, No, Part 1," released in 1997, by Destiny's Child; and (8) "No, No, No, Part 2," released in 1997, by Destiny's Child. (ECF 4, at 5, 10-11, 15-19, 39-132.) He also alleges that Beyoncé Publishing Inc., Parkwood Entertainment, LLC, Columbia Records, and Sony Music Entertainment "have been involved in the creation, production, distribution, and promotion of 'Say My Name.'" (*Id.* at 7.)

appropriation of [Plaintiff's] . . . material for commercial gain." (*Id.*) Plaintiff alleges that he did

not become aware of Destiny Child's infringement of his copyright, specifically, that group's

release of the song "Say My Name," until 2023. (*Id.* at 9.)

The defendants "have willfully infringed [on] Plaintiff's copyrighted work 'Photo Finish'

song collection[,] which contains [a] song entitled 'Assumptions Day.'" (*Id.* at 132.) Plaintiff's

mental-health condition has been "exacerbated by the ongoing infringement." (*Id.* at 36.)

In addition to claims of copyright infringement, Plaintiff's amended complaint's

statement of claim seems to assert claims of "mental anguish" arising from the defendants'

alleged infringement of his copyright.[3]

## DISCUSSION

The Court understands Plaintiff's amended complaint as asserting federal-law claims of

copyright infringement, brought under the court's original federal question jurisdiction, as well

as associated state-law claims, brought under the court's supplemental jurisdiction.

**A.      Statute of limitations**

To the extent that Plaintiff asserts federal-law claims of copyright infringement with

respect to his registered copyright– the one for the work entitled "Photo Finish" – it appears that

such claims must be dismissed because they are untimely.[4] Because the failure to file a claim

---

[3] With respect to Fred Jerkins III, Latavia Roberson, and Letoya Luckett, Plaintiff states
in his amended complaint that all of those defendants are individuals, but that "additional details
about [them] are not provided in the current context." (ECF 4, at 3.) Plaintiff alleges nothing
with respect to the Estate of Lashawn Daniels.

[4] "[A] district court [is] entitled to take judicial notice of [a litigant's] federal copyright
registrations, as published in the Copyright Office's registry." *Island Software & Computer Serv.
v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *see Mariasy v. Poopy Prods., Inc.*, No.
1:20-CV-0461, 2020 WL 6781521, at *1 (N.D.N.Y. Nov. 18, 2020); *Lowery v. Fire Talk LLC*,
No. 19-CV-3737, 2020 WL 5441785, at *2 (E.D.N.Y. June. 29, 2020) (citing cases), *report &
recommendation adopted*, 2020 WL 5425768 (E.D.N.Y. Sept. 10, 2020); *LEGO A/S v. ZURU,
Inc.*, No. 3:18-CV-2045, 2020 WL 13145135, at *7 n.3 (D. Conn. Apr. 22, 2020); *TCA*

within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that his claim is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal *sua sponte* is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (internal quotation marks and citation omitted)); *see also Abbas*, 480 F.3d at 640 (concluding that the district court should grant notice and opportunity to be heard before dismissing a complaint *sua sponte* on statute of limitations grounds).

The statute of limitations for a federal-law claim of copyright infringement is three years. *See* 17 U.S.C. § 507(b). The United States Court of Appeals for the Second Circuit has held that federal-law "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). The Second Circuit has described this "discovery rule" as the following: "[A]n infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence

---

*Television Corp. v. McCollum*, 151 F. Supp. 3d 419, 425 (S.D.N.Y. 2015), *aff'd on other grounds*, 839 F.3d 168 (2d Cir. 2016). Plaintiff alleges that he is "the author and copyright owner of the lyrical composition entitled 'Assumptions Day,' which was registered with the United States Copyright Office on August 9, 2001, under Registration No. PAu2-620-878." (ECF 4, at 4.) According to the United States Copyright Office's Public Catalog, however, Plaintiff does not own the copyright to a *standalone work entitled* "Assumptions Day." Rather, on August 9, 2001, Plaintiff registered a copyright for a work of music lyrics, created in 1997, entitled "Photo Finish," under the registration number PAu002620878. Plaintiff alleges that he "owns a copyright[,] [his] registered work entitled Photo Finish[] with respect to his song ['Assumptions Day,']" (*Id.*) He also alleges that his "registered work entitled 'Photo Finish' song collection . . . includes the song 'Assumption Day.'" (*Id.* at 8.)

should have discovered, the infringement."[5] *Id.* at 124. "Although the standard for whether a

plaintiff should have discovered the relevant infringement is an objective one, courts in this

district regularly look to the relative sophistication of the parties to determine whether the

copyright holder should have, with the exercise of due diligence, discovered [the] alleged

infringement." *Michael Grecco Prod., Inc. v. RADesign, Inc.* No. 21-CV-8381 (RA), ____ F.

Supp. 3d ____, 2023 WL 4106162, at *2 (S.D.N.Y. June 20, 2023) (internal quotation marks and

citations omitted, alteration in original), *appeal filed*, No. 23-1078 (2d Cir. July 20, 2023).

"A copyright claim . . . arises or accrue[s] when an infringing act occurs." *Petrella v.*

*Metro-Goldwyn-Mayer Inc.*, 572 U.S. 667, 670 (2014) (internal quotation marks and footnote

omitted, alteration in original). In addition:

> [i]t is widely recognized that the separate-accrual rule attends the copyright
> statute of limitations. Under that rule, when a defendant commits successive
> violations, the statute of limitations runs separately from each violation. Each
> time an infringing work is reproduced or distributed, the infringer commits a new

---

[5] A court has explained that, in this context, such:

> [d]iscovery of the "critical facts" of injury and causation is not an exacting
> requirement, but requires only knowledge of, or knowledge that could lead to, the
> basic facts of the injury. . . . [A] claim will accrue when the plaintiff knows, or
> should know, enough of the critical facts of injury and causation to protect himself
> by seeking legal advice. A claim does not accrue when a person has a mere hunch,
> hint, suspicion, or rumor of a claim but such suspicions do give rise to a duty to
> inquire into the possible existence of a claim in the exercise of due diligence.

*Parisienne v. Scripps Media, Inc.*, No. 19-CV-8162 (ER), 2021 WL 3668084, at *4 (S.D.N.Y.
Aug. 17, 2021) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)). Moreover:

> [a] plaintiff need not know every permutation of their injury – they simply need to
> have a suspicion of the injury and its cause to be put on inquiry notice. The test is
> not whether a plaintiff could have learned of their injury; rather, it is whether,
> with the application of reasonable diligence, they should have known of their
> injury.

*Id.* (citations omitted).

wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the
wrong occurs. In short, each infringing act starts a new limitations period.

*Id.* at 671 (citation and footnotes omitted). That being said, "[s]eparately accruing harm should

not be confused with harm from past violations that are continuing." *Id.* at 671 n.6.

"Where a plaintiff's claims are time-barred on the face of [his] own complaint, [the

plaintiff] has the burden of pleading facts sufficient to establish that the statutes of limitations

should be tolled." *Amimon Inc. v. Shenzhen Hollyland Tech Co. Ltd.*, No. 20-CV-9170 (ER),

2021 WL 5605258, at *13 (S.D.N.Y. Nov. 20, 2021) (internal quotation marks and citations

omitted, second alteration in original). Generally speaking, a litigant is entitled to equitable

tolling of a limitations period "only if he shows (1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely

filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). In the copyright context, a court has found

that a plaintiff asserting a copyright-infringement claim, who sought equitable tolling of the

applicable limitations period due to the duration of his treatment in a mental hospital and his use

of psychoactive medication for specified periods, was not entitled to such tolling because he

could not show that he "was completely incapacitated and unable to pursue his copyright . . .

claim at **all times** during the relevant statutory limitation period"; "his mental incapacity . . .

[did] not [therefore] suffice to invoke equitable tolling because [his allegations] d[id] not rise to

the level of 'extraordinary circumstance[s]' required to toll the limitations period." *Kiely v.*

*Universal Music Grp.*, No. 19-CV-4826, 2019 WL 9443183, at *5 (C.D. Cal. Dec. 12, 2019)

(emphasis in original, citation omitted, alteration in original).

Plaintiff filed his original complaint and IFP application in this court on November 30, 2023.[6] Thus, any of his claims of copyright infringement that accrued before November 30, 2020, would appear to be untimely. Plaintiff alleges that he was hospitalized multiple times, due to suffering from "severe mental health issues," between 1998 and 2002, including between October 9, 1998, and January 13, 1999, and again between April 14, 1999, and May 11, 1999. (ECF 4, at 33, 35.) He does not, however, allege any facts showing that, during those hospitalizations, he pursued his rights diligently and that, because of extraordinary circumstances, such as his complete incapacitation, he was unable to pursue his copyright-infringement claims. Thus, Plaintiff's hospitalizations, as alleged, do not appear to equitably toll any of the applicable limitations periods.

Plaintiff seems to allege that all of the defendants' infringing works were issued before November 30, 2020. As to the song "Say My Name," Plaintiff alleges that it was released in 1999, on Destiny's Child's album, *The Writing's on the Wall*, by Sony Music Entertainment and Columbia Records. (ECF 4, at 5.) He also alleges that "Say My Name" "played a significant role in [that vocal group's] rise to superstardom and won them their first pair of" Grammy Awards in 2001. (*Id.* at 5-6.) He further alleges that "Say My Name" "was the most successful of the four singles from" that album. (*Id.* at 5.) In addition, he alleges that "Say My Name" "became Destiny's Child's second number-one single on the US Billboard Hot 100 [list], reaching the top ten in Australia, Belgium, Canada, France, Iceland, the Netherlands, New Zealand, Norway, Poland, and the United Kingdom." (*Id.* at 5-6.) Moreover, Plaintiff alleges that Destiny Child's music video for "Say My Name" "won the 2000 MTV Video Music Award for Best R&B

---

[6] While the caption of Plaintiff's IFP application, which he filed with his original complaint, names defendants, there is no caption for the original complaint itself. (*See* ECF 1 & 2.)

Video." (*Id.* at 6.) Furthermore, he alleges that "Say My Name" "won a Soul Train Lady of Soul Award for Best R&B/Soul Single, Group, Band or Duo[,] . . . a BMI Pop Award for Most Played Song[,] . . . [was] ranked . . . at number seven on [Billboard's] list of the '100 Greatest Girl Group Songs of All Time[,]' and [that Billboard also] named [that song] the best song of 2000." (*Id.*)

Though Plaintiff alleges that he did not become aware that "Say My Name" infringed on his copyright until 2023, (*id.* at 9), he references the notoriety that "Say My Name" earned before November 30, 2020. Accordingly, it appears that Plaintiff could or should have known, before that date, that "Say My Name" infringed on his copyright. As to the other songs that Plaintiff alleges infringed on his copyright, Plaintiff alleges that they were issued between 1997 and, at the latest, 2004, but he does not allege any facts showing when he had actual or constructive discovery of those infringements, specifically, when he discovered, or with due diligence should have discovered, those infringements.

Accordingly, the Court dismisses as untimely, and thus, for failure to state a claim on which relief may be granted, any of Plaintiff's claims of copyright infringement that accrued before November 30, 2020. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead those claims in a second amended complaint in which he alleges facts showing why those claims are timely or why the applicable limitations period should be equitably tolled. *See Abbas*, 480 F.3d at 640.

**B.     State-law claims**

A federal district court may decline to exercise supplemental jurisdiction of state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of

jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).

Having dismissed those of Plaintiff's claims of which the Court has original jurisdiction (his

federal-law claims), the Court declines to exercise its supplemental jurisdiction of any of his

state-law claims that remain. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d

Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental

jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'"

(quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's federal-law claims for

failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The

Court declines to consider, under its supplemental jurisdiction, Plaintiff's state-law claims. *See*

28 U.S.C. § 1367(c)(3). The Court, however, grants Plaintiff's motion for leave to file a second

amended complaint insofar as the Court grants Plaintiff 60 days' leave to file a second amended

complaint, as specified above.[7] (ECF 6.) If Plaintiff fails to file a second amended complaint

---

[7] The proper venue for a federal-law claim of copyright infringement is a federal district court for the judicial district "in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Plaintiff alleges that: (1) Destiny's Child "is a well-known musical group organized and existing under the laws of the State of Texas"; (2) Beyoncé Giselle Knowles-Carter resides in California; (3) Kelly Rowland resides in California; (4) Beyoncé Publishing, Inc. "is a corporation organized and existing under the laws of the State of California"; (5) Parkwood Entertainment, LLC "is a limited liability company organized and existing under the laws of the State of New York"; (6) Rodney Jerkins "is an individual and is engaged in the business of publishing musical compositions through his corporation, Rodney Jerkins Productions, Inc. . . . , [which is] organized and doing business under the laws of New Jersey"; (7) Sony Music Entertainment "is a corporation organized and existing under the laws of the State of Delaware"; and (8) Columbia Records "is a corporation organized and existing under the laws of the State of Delaware." (ECF 4, at 2-3.) He does not provide service addresses for any of the abovementioned defendants, and he alleges nothing as to the residence or location of Fred Jerkins III, Latavia Roberson, Letoya Luckett, or as to the Estate of Lashawn Daniels. Thus, Plaintiff has not alleged any facts in his amended complaint showing why this court is a proper venue for any of his federal-law claims of copyright infringement. Plaintiff must allege such

within the time allowed, and cannot show good cause to excuse such failure, the Court will direct

the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this

order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court not to close this action, as the Court has granted

Plaintiff leave to replead his claims in a second amended complaint.

SO ORDERED.

 Dated:   January 18, 2024
         New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

facts, and must provide the defendants' service addresses, in his second amended complaint. *See*
28 U.S.C. § 112(b) (New York State counties that comprise the Southern District of New York).